**John ROE, Plaintiff,**

v.

**CITY OF MILWAUKEE, Officer Wawrzymiakowski, and Other Unnamed Police Officers, Defendants.**

No. 98–C–462.

United States District Court,
E.D. Wisconsin.

Nov. 2, 1998.

Mary M. Gundrum, Legal Aid Society of Milwaukee, Milwaukee, WI, for Plaintiff.

Susan E. Lappen, Assistant City Attorney, Milwaukee, WI, for Defendants.

### DECISION and ORDER

MYRON L. GORDON, District Judge.

This action was originally filed by the plaintiff in the circuit court for Milwaukee County on April 30, 1998. On May 20, 1998, the defendants removed the action to federal court pursuant to 28 U.S.C. § 1441(a) and (b). In their notice of removal, the defendants asserted that removal was proper because the federal court had original jurisdiction insofar as the action involved claims under the laws of the United States, namely 42 U.S.C. § 1983.

Presently before the court are the following motions: (1) "Plaintiff's Motion to Remand and Abstain"; (2) "Defendants' Motion to Dismiss"; and (3) "Plaintiff's Motion to Seal Certificate of Interest." The plaintiff's motion to remand and to abstain will be

granted in part and denied in part. The defendants' motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure will be granted in part and denied in part. The plaintiff's motion to seal his certificate of interest will be held in abeyance pending receipt of additional materials from the plaintiff.

### I. FACTUAL BACKGROUND

The plaintiff's complaint contains the following allegations. At 11:30 p.m. on May 6, 1997, the plaintiff was arrested by Milwaukee police officers. He was observed by those officers to have a cut on his right hand, and, as a result, paramedics were called to the scene by the arresting officers to administer medical care. The plaintiff then informed the paramedics that he was HIV-positive.

After he received medical treatment for his hand, the plaintiff was transported to the fourth district police station in Milwaukee at which time he was "immediately placed in the custody and control of employees and officers of the MPD [Milwaukee police department], including named individual defendant, Officer Wawrzymiakowski, who is listed on the shift roster as the booking officer and other unnamed/unknown MPD officers and employees." (Complaint ¶ 13.) During the booking process, the plaintiff told the booking officer that he was HIV-positive.

After he was placed in his holding cell, "the officer who booked [him] taped a pink piece of paper with black bold writing on his cell door which said 'HIV POSITIVE INMATE'." (Complaint ¶ 15.) When he asked the booking officer why it was there, she said that it was "a reminder to sanitize the cell after the plaintiff left and before another inmate occupied the cell." (Complaint ¶ 16.) Upon his request, the booking officer removed the sign from the cell door. The sign had allegedly been taped to his cell door for three hours. According to the plaintiff, "[d]uring the time that the sign was displayed, it could be seen by any officer or visitor at the station and by any of the at least five other inmates in custody in other cells at the time." (Complaint ¶ 18.)

Thereafter, the plaintiff commenced the instant lawsuit which alleges both federal and state law claims. Specifically, the complaint contains the following federal law claims:

(1) the intentional acts of the individual defendants deprived the plaintiff of his rights to privacy, liberty, due process and equal protection in violation of the Ninth and Fourteenth Amendment of the United States Constitution;

(2) the City's failure to train, supervise and enforce lawful policies regarding disclosures concerning the plaintiff's HIV status deprived the plaintiff of his rights to privacy, liberty, due process and equal protection in violation of the Ninth and Fourteenth Amendment of the United States Constitution;

(3) the acts of the individual defendants violated the plaintiff's right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution; and

(4) the "City's failure to train, supervise and enforce lawful policies regarding such disclosures violated the plaintiff's right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution." (Complaint ¶ 26.)

In addition, the plaintiff advances a number of state law claims:

(1) the intentional acts of the individual defendants deprived the plaintiff of his rights to privacy, liberty, due process and equal protection in violation of the Wisconsin Constitution;

(2) the City's failure to train, supervise and enforce lawful policies regarding disclosures concerning the plaintiff's HIV status deprived the plaintiff of his rights to privacy, liberty, due process and equal protection in violation of the Wisconsin Constitution;

(3) the individual defendants and their employer, the city of Milwaukee, are liable for unreasonably invading the plaintiff's state law statutory right to privacy under Wis. Stats. § 895.50;

(4) the actions of the individual defendants constitute intentional and negligent infliction of emotional distress, and, as such the individual defendants are liable as is the city of Milwaukee under the theory of respondeat superior;

(5) the actions of the individual defendants and their employer, the city of Milwaukee, under respondeat superior, constitute negligence insofar as the individual defendants (a) had a special duty to defend the plaintiff, (b) failed to conform their conduct to the law, and the City failed to train, supervise and enforce lawful policies regarding such disclosures.

## II. PLAINTIFF'S MOTION TO REMAND AND TO ABSTAIN

### A. Motion to Remand

The plaintiff asks that this case be remanded to the circuit court for Milwaukee County because the state claims, over which this court has supplemental jurisdiction, predominate over the federal claims and because the issues raised by the state claims have not yet been decided by any state court. Under 28 U.S.C. § 1367(c), a federal district court may decline to exercise supplemental jurisdiction over state claims if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, where there are other compelling reasons for declining jurisdiction.

■ The plaintiff invokes §§ 1367(c)(1) and (2) as a basis for its contention that this court should decline to exercise supplemental jurisdiction over the state law claims. The decision to exercise supplemental jurisdiction is within the discretion of the district court. *Palivos v. City of Chicago*, 901 F.Supp. 271, 273 (N.D.Ill.1995).

■ My review of the arguments presented by the plaintiff as to the nature of the state law claims he advances persuades me that the better exercise of my discretion warrants that I decline to exercise supplemental jurisdiction over those state law claims. The complaint includes a state law claim that the actions of the defendants violated the plaintiff's statutory right to privacy under Wis. Stats. § 895.50. Wis. Stats.

§ 895.50 imposes liability on a person who "unreasonably invade[s]" the privacy of another. In addition, the statute defines the circumstances which constitute an "invasion of privacy" for purposes of the statute.

The Wisconsin court of appeals has determined that liability may arise under this statute when jail employees verbally disclose an inmate's HIV status to other inmates and jail personnel. *See Hillman v. Columbia County*, 164 Wis.2d 376, 474 N.W.2d 913 (Ct.App.1991). However, it is undisputed that Wisconsin courts have not addressed whether that statute applies to the type of disclosure presented in the instant case; namely, a nonverbal disclosure occasioned by the posting of a sign regarding a pretrial detainee's HIV status on a prison cell door. Moreover, except for the plaintiff's claim that the defendants' conduct violated his right to privacy under the Wisconsin Constitution, the parties have not identified any case law in which a Wisconsin court has addressed the issues raised by the plaintiff's state constitutional claims, nor has the court's own research uncovered any.

■ The defendants do not dispute that the plaintiff's claim under Wis. Stats. § 895.50, as well as the state constitutional claims advanced by the plaintiff, are novel ones under Wisconsin law. As the court of appeals for the seventh circuit has repeatedly instructed, federal courts are not the appropriate forum for venturing beyond the frontiers marked out by state courts themselves. *See Shields Enterprises, Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1298 (7th Cir.1992); *Gust K. Newberg Construction Co. v. E.H. Crump & Co.*, 818 F.2d 1363, 1368 (7th Cir. 1987). *See also Christopher LaSalle and Co., Inc. v. Heller Financial, Inc.*, 731 F.Supp. 279, 290 (N.D.Ill.1990). This is especially so in view of the fact that a federal court's task in exercising supplemental jurisdiction over state claims is to mirror or predict, on the basis of existing state precedent, if any, how a state court would rule on such claims.

The defendants argue, with some cogency, that the interests of judicial economy will not be served by refusing to exercise supplemental jurisdiction. However, any resulting

inefficiency in the existence of parallel proceedings is, in my opinion, substantially outweighed by the interest the Wisconsin courts should have to decide important state statutory and constitutional issues of first impression.

Therefore, I decline to exercise supplemental jurisdiction over the plaintiff's state law claims. Those claims will be remanded to state court. *See Palivos*, 901 F.Supp. 271, 273 (court retained jurisdiction over § 1983 claim and remanded state law claims pursuant to § 1367(c)(2)). However, the plaintiff's request that the *entire* action be remanded to state court will not be granted. Nothing in the language of § 1367(c) authorizes that result, nor has the plaintiff identified any case law supporting that proposition. Indeed, the district court in *Palivos* rejected the same argument presented by the plaintiff in that case. *Palivos*, 901 F.Supp. at 274 n. 3.

### B. Motion to Abstain

The plaintiff also argues that this court should abstain from exercising jurisdiction over the federal claims presented in his complaint pursuant to the *Pullman* abstention doctrine. According to the plaintiff, abstention is appropriate because the "construction of pertinent but less settled" state law—Wis. Stats. § 895.50—by the courts will "likely obviate the need to reach federal constitutional questions." (Plaintiff's Brief in Opposition to Removal and in Support of Plaintiff's Motion to Remand and to Abstain, p. 6.)

■ Federal courts have a strict duty to exercise the jurisdiction conferred upon them by Congress. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996); *International College of Surgeons v. City of Chicago*, 153 F.3d 356, 360 (7th Cir.1998). As a result, the doctrine of abstention is

"an extraordinary and narrow exception of a District Court to adjudicate a controversy properly before it" and may be invoked only in those "exceptional circumstances" in which surrendering jurisdiction "would clearly serve an important countervailing interest."

*Id.* (citing *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–189, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959)).

■ Under the abstention doctrine, a court abstains in order to avoid unnecessary constitutional adjudication. *Id.* at 361. When a court invokes the *Pullman* doctrine as a basis for abstention,

it is not seeking to protect the rights of one of the parties; it is seeking to promote a harmonious federal system by avoiding the collision between the federal courts and state (including local) legislatures.

*Id.* (citing *Waldron v. McAtee*, 723 F.2d 1348, 1351 (7th Cir.1983)).

The *Pullman* doctrine originated in the United States Supreme Court's decision in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In that case, the Pullman Company challenged a regulation of the commission regarding the operation of sleeping cars on the ground that it was violative of the equal protection, due process and commerce clauses of the United States Constitution. In particular, the regulation prohibited the operation of sleeping cars unless there was a conductor, and not only a porter, present. At that time, conductors were white and porters were black. In addition to the federal constitutional claims, the plaintiff brought a state law claim asserting that the commission lacked the legal authority under Texas law to issue the regulation.

The Supreme Court unanimously ruled that abstention was appropriate on the federal constitutional claims pending a state court ruling whether the commission had the authority to issue the regulation. *Id.* at 501–502, 61 S.Ct. 643. The Court reasoned that if the state court determined that the commission did not have the power under state law to issue the regulation, the unsettled state law issue would be resolved, and the Court would not need to address the constitutional challenges to the state statute. *Id.*

More recently, the court of appeals for the seventh circuit has explained that there are two requirements for abstaining under *Pullman:* (1) some risk that the statute will be found unconstitutional or otherwise unlawful

unless narrowed by the state court; and (2) some reasonable chance that it can be narrowed through interpretation. *Mazanec v. North Judson–San Pierre School Corp.,* 763 F.2d 845, 847 (7th Cir.1985).

 In my opinion, application of the *Pullman* abstention doctrine would not be appropriate in this case. Unlike the situation in *Pullman,* the plaintiff in the instant case is not challenging the constitutionality or validity of Wis. Stats. § 895.50 or any other state statute. Rather, the plaintiff is arguing that the state statute provides another avenue for liability on the part of the defendants. Thus, the requirements for abstaining under *Pullman* which were identified by the court of appeals for the seventh circuit are not implicated in this case. Moreover, the state court's determination of the defendants' liability, if any, under Wis. Stat. § 895.50 is not central to the resolution of the federal claims before this court, nor can it be said, with any degree of certainty, that resolution of the state law statutory claim would obviate the need for this court to address the federal constitutional claims.

In sum, I find that abstention pursuant to the *Pullman* doctrine is not appropriate. The plaintiff's application for abstention as to the federal issues will be denied.

### III. DEFENDANTS' MOTION TO DISMISS

The defendants have filed a motion seeking to dismiss the complaint under Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. The portion of the defendants' motion relating to the state law claims will be dismissed as moot because those claims will be remanded to state court.

 A motion to dismiss under Rule 12(b)(6), will only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Kaplan v. Shure Brothers, Inc.,* 153 F.3d 413, 417–418 (7th Cir.1998). "Complaints need not plead law or match facts to every element of a legal theory ...." *Bennett v. Schmidt,* 153 F.3d 516, 518 (7th Cir.1998).

### A. Claims Against the Individual Defendants

 The defendants have moved to dismiss the federal claims against the individual defendants on the ground that these defendants are entitled to qualified immunity from suits for damages under § 1983. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Id.* The plaintiff bears the burden of establishing that the constitutional or statutory right allegedly violated was clearly established at the time the defendants acted. *Lawshe v. Simpson,* 16 F.3d 1475, 1483 (7th Cir.1994).

In the instant case, the defendants are alleged to have disclosed the plaintiff's HIV status to other jail officials and detainees when they temporarily posted a sign on the plaintiff's cell door which read "HIV Positive Inmate." Unless the constitutionality of the defendants' conduct was clearly established in 1997—when they allegedly committed these acts—the defendants are entitled to qualified immunity.

The plaintiff has not identified any appellate or Supreme Court case law which holds that the defendants' nonsystematic disclosure of a pretrial detainee's HIV-positive status through the posting of a sign on his jail cell violates the plaintiff's rights to privacy, due process, equal protection or his right to be free from cruel and unusual punishment. *See Anderson v. Romero,* 72 F.3d 518, 525 (7th Cir.1995) (district court decisions cannot *clearly* establish a constitutional right). Indeed, in a recent case, the court of appeals for the seventh circuit held that under the law as it existed in 1995, it was *not* "clearly established" that prison officials were constitutionally prohibited from revealing the HIV-positive condition of inmates to other inmates

and to guards in order to enable those other inmates and those guards to protect themselves from infection. *Id.* at 524.

With respect to his claim that the defendants' conduct amounted to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the Constitution, the plaintiff, somewhat surprisingly, points to the decision in *Anderson* in support for his contention that the law in this regard was clearly established in 1997. Specifically, the plaintiff relies on an obvious dictum contained in the appellate court's decision in which it made the following statement:

> We can imagine, also, that branding or tattooing HIV-positive inmates (the branding of persons who are HIV-positive was once seriously proposed as a method of retarding the spread of AIDS), or making them wear a sign around their neck that read "I AM AN AIDS CARRIER!" would constitute cruel and unusual punishment.

*Id.*

The plaintiff argues that the defendants' conduct falls squarely within the actions deemed by the court as actionable under the Eighth and Fourteenth Amendments insofar as such conduct is closely analogous to requiring an inmate to wear a sign around his neck disclosing that he is HIV-positive. The problem with the plaintiff's argument is that the court of appeals in *Anderson* did not hold that the described conduct does in fact violate the cruel and unusual punishment clause of the Constitution. Indeed, the court of appeals specifically stated that such issue was not before it. *Id.* Furthermore, the court of appeals stated that in determining whether a constitutional principle was "clearly established" it is not enough that a defendant would have known that *some* disclosures regarding an inmate's HIV-positive status might violate the constitution under *some* circumstances. Rather, the court of appeals concluded that in order for the defendants to be liable under § 1983 they

> would have to know that their specific conduct would be held to be within the orbit of the principles that made conduct in the other circumstances unconstitutional. A public officer does not forfeit his immunity from suits for damages by failing to

prophesy that his conduct will turn out to be within the reach of an evolving case law.

*Id.*

Thus, the plaintiff has not pointed to any controlling case law which demonstrates that temporarily posting a sign disclosing a pretrial detainee's HIV-positive status on his jail cell door violates the prohibition under the Eighth or Fourteenth Amendments against cruel and unusual punishment. In the absence of such case law, it cannot be said that the plaintiff's right to be free from such conduct was "clearly established."

The plaintiff also asserts that, in 1997, it was clearly established that public disclosure by the defendants of a pretrial detainee's HIV-positive status violated the equal protection clause. Once again, the plaintiff relies on the court of appeals' decision in *Anderson*. In that case, the court was asked to determine whether the defendants were entitled to qualified immunity on the plaintiff's claim that he was denied haircuts and yard privileges solely because he was HIV-positive in violation of the equal protection clause.

In my opinion, *Anderson* is not controlling. First, that case is factually distinguishable insofar as the plaintiff in the instant case does not allege that he was denied any privileges because of his HIV status. Further, the court of appeals in *Anderson* did not reach the issue of whether the plaintiff's asserted equal protection right was clearly established because the appellate court determined that it did not have jurisdiction to review the district court's denial of qualified immunity. Thus, the plaintiff has not identified any appellate case which holds that actions like those engaged in by the defendants in this case violate a person's right to equal protection. *Id.* at 525.

In sum, the plaintiff has failed to meet its burden of demonstrating that the constitutional rights allegedly violated by the individual defendants were clearly established at the time the defendants acted. Therefore, the defendants' motion to dismiss the action against the individual defendants will be granted.

## B. The Claims Against the City

The plaintiff also alleges that the City's failure to train, supervise and enforce lawful policies regarding disclosures of the plaintiff's HIV-positive status deprived the plaintiff of his rights to privacy, liberty, due process and equal protection in violation of the Ninth and Fourteenth Amendment and constituted cruel and unusual punishment under the Eighth and Fourteenth Amendment. The defendants argue that these claims should be dismissed because the plaintiff "does no more than plead broad allegations asserting an unconstitutional municipal policy, practice or custom." (Brief of Defendants in Support of Motion to Dismiss, p. 6.)

■■■ A local governmental entity may be subject to suit under § 1983 for inadequate training of its employees. *Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Inadequacy of training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom municipal employees come into contact. *Id.*

The complaint in this case alleges that the City of Milwaukee failed to train, supervise and enforce lawful policies regarding disclosures concerning the plaintiff's HIV-positive status and that such failure deprived the plaintiff of his constitutional rights. The defendants argue that these allegations are insufficient to state a claim for relief because the complaint does not provide any specific allegations as to any policy, practice or custom of the City of Milwaukee.

■■■ In my opinion, the plaintiff's allegations are sufficient under Rule 8, Federal Rules of Civil Procedure, because they give the defendants notice of the plaintiff's claim against the City. As recently stated by the court of appeals for the seventh circuit, a requirement that the plaintiff include in the complaint allegations sufficient (if proved) to prevail at trial is improper insofar as it imposes a requirement of fact pleading. *Bennett,* 153 F.3d at 518. Hence, the defendant's contention that the defendant was required to allege in the complaint the specific policies which violated the plaintiff's rights is not supported by the pleading requirements of the Federal Rules of Civil Procedure.

■■■ The defendants also contend that dismissal of the claims against the City is warranted because the individual officers are not liable under § 1983. The defendants' argument would have merit if this court had determined that the acts of the individual officers were constitutional. *See Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (per curiam) (award of damages against a municipal corporation based on the actions of one of its officers is not authorized when the jury has concluded that the officer inflicted no constitutional harm). However, my dismissal of the claims against the individual officers is not based on the constitutionality of their conduct. Rather, my dismissal is based on the fact that the law surrounding the officers' conduct was not clearly established. This conclusion does not constitute a determination on the merits of the underlying constitutional claims against the officers or the City.

Accordingly, the defendants' motion to dismiss the claims against the City of Milwaukee will be denied.

## IV. MOTION TO SEAL CERTIFICATE OF INTEREST

The plaintiff, who is identified anonymously in the complaint as "John Roe," has filed a "Motion to Seal Certificate of Interest." In his motion, the plaintiff also asks this court to rule on a separate motion he allegedly filed in state court on April 29, 1998, in which he requested leave to proceed anonymously and sought a protective order. To date, the motion to proceed anonymously and for a protective order which was apparently filed in state court *before* the action was removed has not been separately filed in this court nor was a copy of that motion submitted with the notice of removal. As justification for his motion to seal his certificate of interest, the plaintiff relies on the arguments made in his memorandum in support of his motion to proceed anonymously and for a protective order which also has not been filed in this court.

Because the plaintiff's motion to seal his certificate of interest is based, almost entirely, on his motion to proceed anonymously and for a protective order, the plaintiff will be directed to serve and file that later motion with this court, along with the supporting memorandum, within fourteen days from receipt of this decision and order. Failure timely to serve and file that motion will result in dismissal of his motion to seal his certificate of interest.

### ORDER

Therefore, IT IS ORDERED that the plaintiff's "Motion to Remand and Abstain" be and hereby is: (1) granted to the extent that it seeks remand of the state law claim to the circuit court of Milwaukee County; (2) denied to the extent that it seeks remand of the entire action; and (3) denied to the extent that the plaintiff requests that the court abstain from ruling on the federal claims.

IT IS ALSO ORDERED that the state law claims be and hereby are remanded to the circuit court for Milwaukee County.

IT IS FURTHER ORDERED that the defendants' "Motion to Dismiss" be and hereby is: (1) dismissed as moot with respect to the plaintiff's state law claims; (2) granted with respect to the federal claims against the individual defendants; and (3) denied with respect to the federal claims against the City of Milwaukee.

IT IS FURTHER ORDERED that the federal claims against the individual defendants be and hereby are dismissed, with prejudice.

IT IS FURTHER ORDERED that the plaintiff is directed to serve and file his motion to proceed anonymously and for a protective order within fourteen days of receipt of this decision and order, and the City of Milwaukee's response, if any, is to be served and filed within fourteen days after receipt of the plaintiff's motion.

IT IS FURTHER ORDERED that all parties bear their own costs in connection with these motions.